UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COURTNEY ALEX ROBERTS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-cv-514-MTS |
| | ) | |
| U.S. SILICA COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant U.S. Silica Company ("Silica")'s Motion for Summary Judgment, Doc. [83], as well as Plaintiff Courtney Alex Roberts and Plaintiff Samantha Roberts (together, "Plaintiffs")'s Motion for Relief under Federal Rule of Civil Procedure 56(d), Doc. [88]. Each Motion is fully briefed and ready for decision. For the reasons that follow, the Court will deny Plaintiffs' Motion and will defer ruling on Defendant Silica's Motion until the parties submit supplemental summary-judgment briefing as described herein.

**I.   Background**[1]

In May 2018, Plaintiff Courtney Alex Roberts ("Mr. Roberts") was employed by Acme Constructors, Inc. ("Acme"), a contractor that Silica hired to perform maintenance on industrial equipment at its facility in Pacific, Missouri. Doc. [85] ¶¶ 2–3. Pursuant to that arrangement, Mr. Roberts was tasked with emptying the #7 Grinding Mill ("the Mill"), Doc. [85-2] at 4–5; Doc. [85-4] at 3, and dismantling its interior granite lining, Doc. [85] ¶¶ 3, 7. Images of the Mill show

---

[1] Unless otherwise stated, the following facts are properly supported and undisputed pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 4.01(E) of the Eastern District of Missouri Local Rules. If genuinely disputed, the facts are viewed in a light most favorable to Plaintiffs. *See Hester v. Dep't of Treasury*, 137 F.4th 684, 688 (8th Cir. 2025) ("Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.").

that it consists of a horizontal, cylindrical drum large enough for several individuals to climb inside. Doc. [85-3]. Over the course of two days, Mr. Roberts worked alongside three other Acme employees, one of whom was Bryan Hunter ("Mr. Hunter"). Doc. [85-2] at 4; [85-4] at 3; Doc. [85] ¶ 4. According to Mr. Hunter, before any maintenance began, Silica employees installed a hydraulic jack underneath the Mill so that the Acme workers would be able to keep the cylindrical drum stationary while they worked. Doc. [85-4] at 3; Doc. [85] ¶ 10. As Mr. Hunter described in his deposition, the mill jack "was pretty straightforward;" it "worked essentially like a regular . . . jack. It had a little lever on it that . . . reduce[d] the pressure . . . [or] jacked it up . . . And then it had a slot for the pin," which would ultimately support the weight on the jack once the hydraulic pressure was released. Doc. [85-4] at 5.

On day one, the team spent a twelve-hour shift emptying the Mill of the many golf-ball-sized, silica grinding balls stored inside its cylindrical drum. *Id.* at 3; Doc. [85-2] at 4–5. While doing so, the team would occasionally "take the jack down and spin the mill," and "put the jacks back up." Doc. [85-4] at 3. In his deposition, Mr. Hunter explained that "all four of [the Acme workers] would [operate the jack] together," *id.*, including relieving the pressure, spinning the Mill, jacking it back up, bleeding the hydraulics, and putting the pin back in to "get back to work," *id.* at 5. When Mr. Roberts arrived at Silica's facility on the second day, he expected to continue emptying the Mill, but an Acme employee informed him that he would be dismantling the Mill's interior liner. Doc. [85-2] at 4–5; Doc. [85] ¶ 7. Accordingly, Mr. Roberts and Mr. Hunter donned respirators, goggles, and protective suits, crawled inside the Mill through a small opening, used jackhammers to break apart the granite lining into fifteen-to-twenty-pound stones, and removed the stones through a small scuttle hole at the bottom of the cylinder. Doc. [85] ¶¶ 15, 17–18; Doc. [85-4] at 6–7; Doc. [85-2] at 4–6. Mr. Roberts and Mr. Hunter replaced an earlier crew who had

already begun the process, and by the time the two men began their shift, the bottom half of the Mill's lining had already been removed.  Doc. [85-4] at 4–5; Doc. [85-2] at 6.  Neither Mr. Roberts nor Mr. Hunter inspected the hydraulic mill jack before entering the Mill.  Doc. [85] ¶ 13.  They spent two hours "jackhammering and tossing out blocks" before the Mill suddenly rotated 180 degrees, causing both men to be tossed about inside the drum.  Doc. [85-4] at 4, 7–8; Doc. [85-2] at 7–8.  Additionally, Mr. Roberts was buried beneath a pile of stones.  Doc. [85-2] at 7–8.  He lost consciousness and was taken to a hospital to treat his injuries.  *Id.* at 6, 8.  The Mine Safety and Health Administration investigated the incident and issued a report explaining that "[t]he #7 Grinding Mill was not properly blocked against motion prior to work being performed," and as a result, "the shell was allowed to move freely resulting in the miners inside the [Mill] being exposed to movement of the mill, liner removal tools, and loose material."  Doc. [90-2].

In response to the above, Plaintiffs assert two counts against Silica, one for negligence and another for loss of consortium.  Doc. [7].  As the Court has previously explained, this litigation has been quite protracted, and Plaintiffs have had difficulty meeting expert discovery deadlines as prescribed by the Federal Rules of Civil Procedure and set in several Case Management Orders.  *See* Doc. [79], 2025 WL 33485, at *1.  This culminated in the Court granting Defendant's unopposed Motion to Strike Plaintiff's Expert Designations, Doc. [70], and the Court thereafter denied Plaintiffs' Motion for Rule 60(b) Relief from the operative Case Management Order, which, consistent with the prior Order, did not allow time for additional expert discovery, Doc. [84], 2025 WL 833051, at *2.

Silica now moves to dismiss Plaintiffs' Complaint, arguing that it fails to state a claim of negligence and, alternatively, for summary judgment, asserting that Plaintiffs cannot put forth a submissible negligence claim without expert testimony.  Doc. [83].  In response, Plaintiffs seek

leave to take expert discovery pursuant to Federal Rule of Civil Procedure 56(d), Doc. [88], and nevertheless contend that, even without expert discovery, "[Plaintiffs] would still be able to submit their case to a jury." Doc. [90] at 7.

## II.     Discussion

### A. Plaintiffs' Motion for Relief under Federal Rule of Civil Procedure 56(d)

Rule 56(d) operates "to provide an additional safeguard against an improvident or premature grant of summary judgment." *U.S. ex. rel. Bernard Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002). As Plaintiffs acknowledge, "[a] Court may grant a Rule 56(d) motion 'where the nonmoving party *has not had the opportunity* to discover information that is essential to [his] opposition.'" Doc. [88] at 1–2 (quoting *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483–44 (4th Cir. 2014) (emphasis added)). Appropriately, then, Rule 56(d) "is not designed to give relief to those who sleep upon their rights." *Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 29 (1st Cir. 2013). A party seeking relief under Rule 56(d) must show "that additional facts would be necessary to avoid summary judgment and that they had been diligent in pursuing discovery." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1082 (7th Cir. 2016) (citing *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012)).

Plaintiffs have failed in both respects. As this Court has already explained, Plaintiffs cannot credibly assert that they have diligently pursued expert discovery during this litigation.[2] Plaintiffs have had ample opportunity to acquire expert discovery in this case, but they failed to

---

[2] In their Motion, Plaintiffs catalog their efforts to resolve this matter through mediation, Doc. [88] at 4, but those efforts do not excuse them from abiding by case deadlines and obtaining discovery to support their claims. *See, e.g.*, *Lingo v. Burle*, 4:06-cv-1392-CAS, 2007 WL 9805624, at *1 (E.D. Mo. Oct. 4, 2007) (noting that "participation in settlement negotiations does not stay the case or excuse a party's failure to meet the deadlines in the case management order"); *Afr. Growth Corp. v. Republic of Angola*, 1:19-cv-21995-KRW, 2020 WL 13104703, at *1 (S.D. Fla. July 14, 2020) ("Plaintiff's attempt to resolve claims does not obviate its obligation to adhere to the Court's deadlines and to diligently pursue its claims.").

- 4 -

do so during the time allotted.  The Court can deny Plaintiffs' request on this basis alone.  *See Berkely v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (noting that then-Rule 56(f) "is not properly invoked to relieve counsel's lack of diligence"); *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006) (requiring the party seeking relief to "make a showing . . . that discovery has been inadequate").  But even if Plaintiffs had been sufficiently diligent, their motion fails to "set forth in affidavit form the specific facts that they hope to elicit from further discovery," nor have they shown that the "sought-after facts are essential to resist the summary judgment motion." *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018) (internal quotations omitted).  Plaintiffs' Motion merely describes the topics that prospective experts would address.  *See* Doc. [84] at 4 (seeking a witness "who can testify as to the requisite training of contractors entering mine spaces under the Federal Mine Safety Act" and describing the need "to obtain further evidence . . of Plaintiffs injuries and their ultimate prognosis").  This is insufficient.  *See Payton v. City of St. Louis*, 4:20-cv-00861-SEP, 2021 WL 1222427, at *6 (E.D. Mo. Mar. 31, 2021) (denying plaintiff's Rule 56(d) motion where her "supporting affidavit . . . [did] not include specific, discoverable facts" essential to summary judgment).  Therefore, the Court will deny Plaintiffs' Motion for Relief under Federal Rule of Civil Procedure 56(d).

### B.  Silica's Motion to Dismiss and for Summary Judgment

The Court now turns to the arguments raised in Silica's Motion.  Silica first argues that Plaintiffs' Complaint must be dismissed because it "fail[s] to allege any contract or legal source" that would require Silica "to protect the plaintiff from injury."  Doc. [84] at 6 (citing Fed. R. Civ. P. 12(b)(6)).[3]  Second, "[e]ven assuming, *arguendo*, [that] Plaintiffs' [Complaint] alleged a duty,"

---

[3] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[T]he complaint should be read as

Silica asserts that it is entitled to summary judgment because Plaintiffs' claims cannot proceed without expert testimony.[4]  Doc. [84] at 6.  More specifically, Silica argues that (1) "expert testimony would be necessary to help a jury determine [whether] the silica ball mill with the hydraulic mill jack system [was] in a defective condition and . . . caused Plaintiffs' injuries," and (2) "whether the silica ball mill was in a dangerous condition or unreasonably dangerous is a conclusion that is sufficiently technical and complex to be outside the common knowledge or experience of a jury."  *Id.* 8–9.

### 1. Dismissal is inappropriate because the allegations in Plaintiffs' Complaint support the existence of a duty owed to Mr. Roberts.

Beginning with Silica's Rule 12(b)(6) arguments, the question before the Court is whether the Complaint's well-pleaded facts, taken as true, together with all reasonable inferences drawn in Plaintiffs' favor, *see Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020), establish a duty that Missouri law is prepared to recognize.  *See Topichan v. JP Morgan Chase Bank, N.A.*, 760 F.3d 843, 848–49 (8th Cir. 2014) (explaining that the "well-pleaded facts alleged in the complaint . . . must be viewed" to determine whether the plaintiff "stated a claim" and that "the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory").  The Court undertakes this analysis based solely on the allegations in Plaintiffs' Complaint and does not consider the facts derived from the summary-judgment record. "The existence of a duty is a question of law for the court based on the court's determination whether the facts pleaded . . . show 'the existence of a relationship between the

---

a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

[4] "The court shall grant summary judgment if [Silica] shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the movant, Silica bears the initial burden of "informing the district court of the basis for its motion and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotations omitted) (citation modified).

plaintiff and defendant that the law recognizes as the basis of a duty of care.'" *Cleek v. Ameristar Casino Kan. City*, 47 F.4th 629, 636 (8th Cir. 2022) (quoting *O'Donnell v. PNK (River City), LLC*, 619 S.W.3d 162, 167 (Mo. Ct. App. 2021)).

The allegations in Plaintiffs' Complaint establish such a relationship. Plaintiffs assert that Mr. Roberts was an employee of Acme Constructors, Inc., an entity that Silica hired to perform maintenance in one of its facilities, Doc. [7] ¶¶ 6–7; Doc. [10-1], and in the course of that employment, Mr. Roberts was required to perform maintenance on a piece of industrial equipment "owned, operated, and maintained" by Silica at its facility, Doc. [7] ¶ 6. Moreover, it was Silica's intention that Mr. Roberts enter its premises to perform that maintenance, and Mr. Roberts worked "in a manner [that Silica] expected and intended." *Id.* ¶ 7. These allegations establish that Mr. Roberts was an independent-contractor employee who had "permission to use [Silica's] facilities," and as such, Mr. Roberts was Silica's business invitee "to whom [Silica] owe[d] a duty to have its facilities in a reasonably safe condition." *Key v. Diamond Int'l Trucks*, 453 S.W.3d 352, 360 (Mo. Ct. App. 2015).

Stated more broadly, the allegations in Plaintiffs' Complaint establish Mr. Roberts as an invitee to whom Silica had "an obligation to use reasonable and ordinary care to prevent injury." *Hamlick v. SBC Corp. Servs.*, 832 S.W.2d 925, 927 (Mo. Ct. App. 1992) (describing the duty owed to an independent-contractor employee). Further, because Silica "maintained, owned, and operated" the Mill and because Mr. Roberts worked on the Mill "in a manner" that *Silica* "expected and intended," Plaintiffs' allegations permit a reasonable inference that Silica exercised sufficient control over Mr. Roberts's work such that Silica owed a duty of care to Mr. Roberts while he was working. Doc. [7] ¶¶ 6–7; *but see Matteuzzi v. Columbus P'ship*, 866 S.W.2d 128, 132 (Mo. banc 1993) (Limbaugh, J.) (affirming dismissal where state-court petition "failed to allege sufficient

landowner control to state a cause of action"); *cf. Landrith v. Farmers Ins. Co.*, 4:22-cv-00401-DGK, 2022 WL 4295293, at *2 (W.D. Mo. Sep. 16, 2022) (acknowledging that "Missouri's fact-pleading standard is more stringent than the federal standard"). Accordingly, the Court will not dismiss Plaintiffs' Complaint for failure to allege a duty owed.

> **2. On the current summary-judgment record, the Court is not convinced that Silica is entitled to summary judgment based solely on Plaintiffs' lack of expert testimony.**

Turning now to Silica's summary-judgment arguments, the Court finds them well taken in general, but they ultimately fall short due to the imprecise nature of Plaintiffs' Complaint, which alleges various instances of Silica's negligent misconduct. *See* Doc. [7] ¶ 10 (first alleging, in different subparagraphs, that the hydraulic jack was in disrepair, the jack was "not properly installed to contact the Mill shell," and that Silica failed to inspect, repair, or maintain either the Mill or "the grinding mill block system, including the jack," and then alleging that the Mill was in a defective condition, that it "could not be blocked against motion," and that Silica negligently failed to barricade the Mill or warn others about it).[5]  In other words, Plaintiffs allege that Silica breached its duty "to use reasonable and ordinary care to prevent injury" to Mr. Roberts in various ways, *Hamlick*, 832 S.W.2d at 927, and their Complaint therefore seems to encompass several different theories of negligence liability. *See, e.g.*, *Miller v. BNSF Ry. Co.*, 1:15-cv-02268-WJM-NYW, 2017 WL 1880603, at *4 (D. Colo. May 9, 2017) (describing a complaint that "pursues a single claim of negligence but advances a variety of specific theories as to how exactly [defendant] was allegedly negligent").

The Court agrees with Silica that expert testimony would be required for this case to proceed before a jury on at least some of the theories that Plaintiffs appear to pursue. As Silica

---

[5] As at least one other court has observed, "[t]hinly alleging multiple claims makes a court think that none have much merit." *Thorson v. Comty. Sch. Dist. 300*, 3:20-cv-50132, 2021 WL 1784796, at *4 (N.D. Ill. May 5, 2021).

rightly points out, "expert testimony is necessary where 'the lay jury does not possess the experience or knowledge of the subject matter sufficient to enable them to reach an intelligent opinion without help.'" *Pro Serv. Auto. LLC v. Lenan Corp.*, 469 F.3d 1210, 1214 (8th Cir. 2006) (quoting *Siebern v. Missouri-Illinois Tractor & Equip. Co.*, 711 S.W.2d 935, 939 (Mo. Ct. App. 1986)). So, to the extent Plaintiffs intended to establish Silica's liability based on a defective component within the hydraulic jack or the Mill itself, the Court would require expert testimony to help the jury determine whether such a defect existed and whether it caused Mr. Roberts's injuries. *See Shafer v. Amada Am., Inc.*, 335 F. Supp. 2d 992, 998 (E.D. Mo. 2003) (requiring expert testimony to explain the defective nature of a piece of equipment); *Pro Serv.*, 469 F.3d at 1214 (requiring expert testimony to determine whether a defective engine caused plaintiff's injuries). Likewise, the Court would require expert testimony to the extent Plaintiffs sought to establish that Silica deviated from a professional standard of care with respect to the work that it delegated to Mr. Roberts and his Acme colleagues. *See Parra v. Bldg. Erection Servs.*, 982 S.W.2d 278, 285 (Mo. Ct. App. 1998) (noting that expert testimony is generally required to prove breach of a professional standard).

But on the record before it, the Court is not convinced that expert testimony is *required* to, as Silica argues, "help the jury understand how the [Mill] and hydraulic mill jack worked," discern "how [Mr. Roberts's] accident occurred," or conclude that the Mill constituted a "dangerous condition" within Silica's facility.[6] Doc. [84] at 8–9. "[E]xpert testimony is only required 'when a fact at issue is so technical or complex that no fact-finder could resolve the issue' without it."

---

[6] To succeed on a premises liability claim, Plaintiffs must prove "(1) a dangerous condition existed on [Silica's] property, (2) [Silica] knew, or by using ordinary care should have known, of the condition, (3) [Silica] failed to use ordinary care in removing or warning of the danger, and (4) [Mr. Roberts] sustained injuries as a result of the dangerous condition." *Roberson v. AFC Enters.*, 602 F.3d 931, 934 (8th Cir. 2010) (applying Missouri law). These principles apply where, as here, discrete pieces of machinery form part of an "integrated industrial plant." *See Mouser v. Caterpillar, Inc.*, 336 F.3d 656, 663–64 (8th Cir. 2003) (applying Missouri law).

- 9 -

*Penzel Constr. Co. v. Jackson R-2 Sch. Dist.*, 544 S.W.3d 214, 228 (Mo. Ct. App. 2017) (quoting *Stone v. Mo. Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 21 (Mo. banc 2011)).  And here, other forms of evidence are available to allow the jury to resolve the factual issues that Silica raises.  *See, e.g.*, *Hutson v. BOT Inv. Co.*, 3 S.W.3d 878, 885 (Mo. Ct. App. 1999) (noting that "[p]laintiff may prove essential facts by circumstantial evidence" in a premises liability case).

For example, deposition testimony already in the record indicates that there are witnesses with personal knowledge of the machinery at issue and the events surrounding the incident.  *See, e.g.*, Doc. [85-4]; *see also Wactor v. Spartan Transp. Corp.*, 27 F.3d 347, 350–51 (8th Cir. 1994) (finding industry workers "sufficiently qualified to give lay opinion testimony, based upon industry experience, regarding the condition of the [injury-causing equipment] and the events each participated in and witnessed preceding [plaintiff's] alleged injury").  More importantly, Plaintiffs have put forth evidence from which a reasonable factfinder could conclude that, at the time of the incident, the Mill was a dangerous condition on Silica's premises because the Mill was not braced to prevent rotation while workers were inside.  *See Rycraw v. White Castle Sys., Inc.*, 28 S.W.3d 495, 499 (Mo. Ct. App. 2000) (explaining that premises liability requires "some testimony or other evidence from which it can be inferred there was a dangerous condition on [the premises]").  Indeed, a factfinder could credit the MSHA investigator's summary that the Mill "was not properly blocked against motion prior to work being performed" such that "the shell was allowed to move freely resulting in the miners inside the [Mill] being exposed to movement of the mill, liner removal tools, and loose material."  Doc. [90-2].[7]  The same evidence would permit a factfinder

---

[7] Silica objects to the use of the MSHA report at summary judgment on two grounds, neither of which has merit. Fed. R. Civ. P. 56(c)(2) (permitting objections to the extent "the material cited . . . cannot be presented in a form that would be admissible in evidence").  First, Silica argues that the Court cannot consider the "unsworn statements contained in the MSHA report," citing the Supreme Court's discussion of Federal Rule of Civil Procedure 56(e) in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970).  Doc. [94] at 1.  But Rule 56(e) has since been amended, and the rule language discussed in *Adickes* has been removed.  Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010

to conclude that the unsecured Mill caused Mr. Roberts's injuries.[8]  *Id.*  Accordingly, Silica has not shown that it "is entitled to judgment as a matter of law" for the sole reason that Plaintiffs lack expert testimony.  Fed. R. Civ. P. 56(a).

*      *      *

In sum, Silica's present arguments fall short because the allegations in Plaintiffs' Complaint support the existence of a legal duty recognized under Missouri law, and the Court is not persuaded, based on the current record, that Plaintiffs *must* prove either a breach of that duty or causation via expert testimony.  However, the thrust of Silica's 12(b)(6) argument—that it owed no duty to keep Mr. Roberts safe—appears meritorious on a summary-judgment posture.  Therefore, the Court will require Silica to file supplemental summary-judgment briefing that addresses the following questions: (1) whether the undisputed facts in the record permit the Court to find as a matter of law that Silica did *not* owe Mr. Roberts a duty of care with respect to the incident in question, *see Mouser*, 336 F.3d at 664–65; *see also Spaulding v. Conopco, Inc.*, 740 F.3d 1187, 1191–92, 1195–96 (8th Cir. 2014);[9] and (2) even assuming a duty of care existed,

---

amendment.  Second, to the extent Silica objects to the MSHA report on hearsay grounds, *see* Doc. [94] at 1 (citing, without explanation, *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014) (discussing the inadmissibility of hearsay)), the Court finds that the MSHA report is a "record or statement of a public office" setting out "factual findings from a legally authorized investigation."  Fed. R. Evid. 803(8)(A)(iii); *see also Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 613, 618 (8th Cir. 1983) ("[Courts] have often admitted government reports setting forth agency opinions and conclusions on the ground that such reports . . . are presumptively reliable.").  And Silica has failed to put forth any circumstances challenging the report's trustworthiness.  *See Kehm*, 724 F.3d at 618.

[8] Of course, Plaintiffs would still need to put forth appropriate summary judgment evidence from which a reasonable factfinder could conclude that Silica had actual or constructive notice of the Mill's dangerous state.  *Roberson*, 602 F.3d at 934.  To that end, the Court notes that Silica's objection to the excerpted portion of Michael Ray's deposition testimony is well founded.  *Compare* Doc. [90-1], *with* Doc. [94]; *see* Fed. R. Civ. P. 56(c)(2).  His opinion about what structural features the Mill should or should not have had crosses the line between permissible lay opinion testimony "rationally based on the witness's perception" and expert testimony based on Mr. Ray's "technical" or "specialized knowledge," *United States v. Watkins*, 127 F.4th 1142, 1144–45 (8th Cir. 2025), and Mr. Ray is not designated as an expert in this matter, *see* Fed R. Civ. P. 26(a)(2).

[9] This Court is bound by the Eighth Circuit's interpretation of Missouri law.  *See One Grp. Hosp. v. Emps. Ins. Co.*, 632 F. Supp. 3d 962, 971 (W.D. Mo. 2022); *see also Major Brands, Inc. v. Mast-Jagermeister US Inc.*, 121 F.4th 661, 671 (8th Cir. 2024) ("Absent an intervening opinion by a state court, we are bound by a prior panel's interpretation of state law." (citation modified)).

whether there is any summary-judgment evidence in the record from which a reasonable factfinder could conclude that Silica breached that duty. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (explaining that summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof").

Accordingly,

**IT IS HEREBY ORDERED** that the trial setting in this matter is **VACATED** pending further order of the Court.

**IT IS FURTHER ORDERED** that the parties' joint Motion for an Informal Teleconference regarding Pretrial Matters, Doc. [95], is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Relief Pursuant to Federal Rule of Civil Procedure 56(d), Doc. [88], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant U.S. Silica Company's Motion for Summary Judgment, Doc. [83], is **HELD IN ABEYANCE** pending the parties' forthcoming supplemental briefing.

**IT IS FURTHER ORDERED** that Defendant U.S. Silica Company shall file, no later than **October 14, 2025**, supplemental summary-judgment briefing consistent with this Memorandum and Order. Defendant U.S. Silica Company's briefing shall comply with Eastern District of Missouri Local Rule 4.01 in all respects. *See* E.D. Mo. L.R. 4.01(E).

**IT IS FURTHER ORDERED** that Plaintiffs shall file a Response to Defendant U.S. Silica Company's supplemental briefing no later than **November 04, 2025**. Plaintiffs' Response shall also comply with Local Rule 4.01 in all respects. *See* E.D. Mo. L.R. 4.01(E).

**IT IS FINALLY ORDERED** that Defendant U.S. Silica Company shall file any Reply no later than **November 14, 2025**.

Dated this 11th day of September 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE